# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**PRO VIDEO INSTRUMENTS, LLC,**

      **Plaintiff,**

**v.**                                                              **Case No: 6:18-cv-1823-Orl-31KRS**

**THOR FIBER, INC.,**

      **Defendant.**

## ORDER

This matter comes before the Court without a hearing on the Amended Motion for Preliminary Injunction (Doc. 14) filed by the Plaintiff, Pro Video Instruments, LLC (henceforth, "PVI"), and the response in opposition (Doc. 25) filed by the Defendant, Thor Fiber, Inc. ("Thor Fiber").

### I. Background

At least for purposes of resolving the instant motion, the following information is undisputed. The parties to this case sell electronic equipment used in the processing and distribution of audio and visual signals. PVI is the registered owner of several federal trademarks, including three that are at issue in this suit: the MINIMOD mark, the MICROMOD mark, and the VECOAX mark. The former is directed to, *inter alia*, video processors and video transmission apparatus, while the latter pair are directed to "RF tuning devices," which are described as "modulators which distribute high definition and standard definition video signals." (Doc. 14 at 3). PVI has sold products bearing the marks in interstate commerce for several years.

Thor Fiber sells products that perform similar functions. More particularly, Thor Fiber sells a product identified as the "H-PCKT-MOD (Encoder Modulator)" that competes with PVI

products that bear the MINIMOD and MICROMOD marks, and a Thor Fiber product line identified as "H-HDCOAX-XX" competes with PVI products that bear the VECOAX mark.[1] (Doc. 14 at 4). PVI contends that these Thor Fiber products "adopt[] the same color schemes, design, and configuration" as its products bearing the MINIMOD, MICROMOD, and VECOAX marks. (Doc. 14 at 4).

On October 26, 2018, PVI filed the instant suit against Thor Fiber. (Doc. 1). On November 14, 2018, PVI filed this motion, seeking to preliminarily enjoin Thor Fiber from using or selling products bearing the H-PCKT-MOD and H-HDCOAX-XX marks and similar trade dress during the pendency of these proceedings.

**II. Legal Standards**

**A. Preliminary Injunction**

A district court may grant injunctive relief only if the moving party shows the following: (1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

---

[1] The parties use different names to refer to this product line, with PVI referring to it simply as HDCOAX rather than Thor Fiber's preferred H-HDCOAX-XX. A review of Thor Fiber's website shows that the product line is identified there as H-HDCOAX-XX, and the individual products are identified as H-HDCOAX-1 to H-HDCOAX-8; the numeral at the end reflects the maximum number of HDMI inputs supported by the product. *See* https://thorbroadcast.com/product/1-8-hdmi-digital-rf-modulator-cc-closed-captioning.html. PVI does not point to any instance of the product line being advertised or sold under HDCOAX, alone, or otherwise explain why the Court should consider only HDCOAX for purposes of assessing possible trademark infringement. The remainder of this order will therefore utilize H-HDCOAX-XX rather than HDCOAX.

A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant has clearly established the "burden of persuasion" as to each of the prerequisites. *Id.* At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (internal quotation and citation omitted). In trademark disputes, a sufficiently strong showing of likelihood of confusion may by itself constitute a showing of substantial likelihood of prevailing on the merits and/or a substantial threat of irreparable harm. *E. Remy Martin & Co., S.A. v. Shaw-Ross Intern. Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985).

**B. Trademark Infringement**

Trademarks are "any word, name, symbol, or device, or any combination thereof [used] to identify and distinguish one's goods … from those manufactured or sold by others and to indicate the source of the goods." 15 U.S.C. § 1127. Trademark infringement is proscribed by 15 U.S.C. § 1114(1)(a), which prohibits the "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."

**III. Analysis**

To prevail on a trademark infringement claim based on a federally registered mark, a plaintiff must establish (1) that it possesses a valid mark; (2) that the defendant(s) used the mark; (3) that the defendants' use of the mark occurred "in commerce"; (4) that the defendants used the mark "in connection with the sale … or advertising of any goods"; and (5) that the defendants

used the mark in a manner likely to confuse consumers. *See North American Medical Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008). For purposes of the instant motion, Thor Fiber challenges only the fifth element of PVI's infringement claim – *i.e.,* that it used the marks at issue in a fashion likely to cause consumer confusion.

To determine whether a likelihood of consumer confusion exists, courts consider the following factors: (1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' trade channels and customers; (5) similarity of advertising media; (6) defendant's intent; and (7) actual confusion. *Frehling Enters., Inc. v. Int'l Select Grp, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). Within this circuit, the first and last elements are the most important to consider. *Id.* However, the court does not have to consider all of these factors in every case, and in some cases new factors may merit consideration. *Swatch Watch, S.A. v. Taxor, Inc.*, 785 F.2d 956, 958 (11th Cir. 1986). Thor Fiber does not challenge PVI's assertions regarding the third (similarity of products), fourth (similarity of trade channels/customers), and fifth (similarity of advertising media) factors – *i.e.*, that the parties sell similar products through similar channels via similar means. The remaining factors are addressed below.

<u>Type of Mark</u>

The United States Court of Appeals for the Eleventh Circuit recognizes four categories of marks. In ascending order of strength, those categories are: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. *Tana v. Dantanna's*, 611 F.3d 767, 774 (11th Cir. 2010). The stronger the mark, the greater the scope of protection accorded to it. *Frehling*, 192 F.3d at 1335.

> The categories are based on the relationship between the name and the service or good it describes. Generic marks are the weakest and not entitled to protection – they refer to a class of which an individual service is a member (*e.g.*, "liquor store" used in

> connection with the sale of liquor). Descriptive marks describe a characteristic or quality of an article or service (*e.g.*, "vision center" denoting a place where glasses are sold).[2] Suggestive terms suggest characteristics of the goods and services and require an effort of the imagination by the consumer in order to be understood as descriptive. For instance, "penguin" would be suggestive of refrigerators. An arbitrary mark is a word or phrase that bears no relationship to the product (*e.g.*, "Sun Bank" is arbitrary when applied to banking services). Arbitrary marks are the strongest of the four categories.
>
> Also important in gauging the strength of a mark is the degree to which third parties make use of the mark. The less that third parties use the mark, the stronger it is, and the more protection it deserves.

*Id.* at 1335-36 (internal citations and quotations omitted). Registration of a trademark on the principal register of the USPTO establishes a rebuttable presumption that the mark is protectable and distinct. *ZP No. 314, LLC v. IOLM Capital, LLC*, 335 F.Supp.3d 1242, 1256 (S.D. Ala. 2018) (citing, *inter alia*, 15 U.S.C. § 1057(b)).

PVI contends that its marks are arbitrary, and therefore qualify for the most protection, because they "bear no logical relationships to the products on which they appear." (Doc. 14 at 9). Thor Fiber contends that PVI's marks are merely descriptive because they contain shortened versions of terms that identify a PVI product or one of its components. As Thor Fiber points out, "VECOAX" includes "coax," a commonly recognized shortened version of "coaxial cable," while the marks "MINIMOD" and "MICROMOD" include "mod," a shortened version of the term "modulator."[3] (Doc. 25 at 5). However, at least at this stage of the proceedings, the Court finds

---

[2] Descriptive marks are only entitled to protection if they have acquired "secondary meaning" by becoming associated with the proprietor's product. *Welding Services, Inc. v. Forman*, 509 F.3d 1351, 1358 (11th Cir. 2007). A name has acquired secondary meaning when the primary significance of the term in the mind of the consuming public is not the product but the producer. *Id.*

[3] On its website, PVI describes one of its products, the "VECOAX MiniMod-2," as "a Compact HDMI Modulator to channel to distribute HD Video over coax with real time perfect quality". https://www.provideoinstruments.com/COMPACT-Modulators_c_49.html

that it is an overstatement to say the marks are merely descriptive. For one thing, all three of PVI's marks are federally registered, which gives rise to a presumption that they are protectable and distinct. For another, part of each mark – such as the "VE" in "VECOAX" – has not been shown to be a common or merely descriptive term in regard to the type of products being sold by these parties. Accordingly, for purposes of this motion, the Court finds that the three PVI marks are entitled to protection even in the absence of evidence that they have acquired secondary meaning.

Similarity of Mark[4]

PVI contends that Thor Fiber's H-PCKT-MOD (Encoder Modulator) mark is confusingly similar to its MINIMOD and MICROMOD marks and that Thor Fiber's H-HDCOAX-XX mark is similar to its VECOAX mark.[5] And there is some overlap between the marks. Thor Fiber's H-PCKT-MOD (Encoder Modulator) mark has the term "MOD" in common with PVI's MINIMOD

---

(capitalization in original).

[4] In its motion, PVI also asserts that the product design and packaging of the Thor Fiber products at issue mimic those of its MINIMOD, MICROMOD, and VECOAX products. (Doc. 14 at 4-6). It appears that PVI has dropped these claims. Its original Complaint included three claims for trade dress infringement, but its Amended Complaint (Doc. 26), which was filed several weeks after the filing of this motion, does not. However, to the extent that PVI might continue to rely on the trade dress allegations here, the Court has reviewed PVI's evidence on this point and finds that it does not support PVI's claim of entitlement to a preliminary injunction. The products share common colors of black, red, white, and silver, but they are utilized in different amounts on each product, and both contain dissimilar elements – such as the prominently displayed name on PVI's product, and the prominently displayed "THOR BROADCAST" logo on Thor Fiber's – which have no real equivalent on the competing product. *See* Doc. 14 at 5.

[5] Thor Fiber asserts that the "marks" about which PVI complains here – "H-PCKT-MOD (Encoder Modulator)" and "H-HDCOAX-XX" – are merely parts numbers rather a true trademark intended to identify a product's source. (Doc. 25 at 10). But Thor Fiber presents no case law suggesting that such parts numbers are to be treated differently than "true" marks for purposes of infringement analysis. Accordingly, the remainder of this motion will refer to "H-PCKT-MOD (Encoder Modulator)" and "H-HDCOAX-XX" as trademarks and treat them as such.

and MICROMOD marks, and both H-HDCOAX-XX and VECOAX have the term "COAX" in common.  However, if the common element of conflicting marks is a word that is weak, this lessens the likelihood of confusion.  4 McCarthy on Trademarks and Unfair Competition § 23:48 (5th ed.).  As discussed above, the products being sold are types of modulators that distribute electronic signals over coaxial cables, meaning that "mod" and "coax" are descriptive terms in these usages.  A portion of a mark that is merely descriptive may be considered weak.  *Id*.  Because the common elements here are merely descriptive, the Court finds (for purposes of this motion, only) that there is little or no likelihood of confusion between Thor Fiber's H-PCKT-MOD (Encoder Modulator) mark and PVI's MINIMOD and MICROMOD marks, and that the same holds true as between Thor Fiber's H-HDCOAX-XX mark and PVI's VECOAX mark.

<u>Defendant's Intent</u>

"If it can be shown that a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation, this fact alone may be enough to justify the inference that there is confusing similarity."  *Frehling*, 192 F.3d at 1340.  PVI argues that Thor Fiber's decision to adopt confusingly similar marks and trade dress demonstrate an intent to derive a benefit from PVI's business reputation.  (Doc. 14 at 19).  PVI's argument is circular. Stated differently, PVI is arguing (1) that Thor Fiber adopted confusingly similar marks because it wanted to benefit from PVI's reputation, which in turn (2) justifies an inference that Thor Fiber's marks are confusingly similar.  In any event, as discussed *supra*, for purposes of this motion the Court finds that the neither Thor Fiber's marks nor its trade dress are confusingly similar to those of PVI.

<u>Actual confusion</u>

Though actual confusion is the best evidence of likelihood of confusion, plaintiff need not present evidence of actual confusion to prevail on its infringement claim. *Frehling*, 192 F.3d at 1340. As evidence of actual confusion, PVI points to an affidavit (Doc. 15) from Silvia Fioravanti ("Fioravanti"), its manager. Fioravanti says that on at least a dozen occasions, PVI received calls from consumers who had purchased Thor Fiber products, seeking technical and customer support. (Doc. 15 at 3-4).

> During the course of the support calls, it became apparent that the consumers' underlying products were not PVI products. When PVI staff questioned the consumers, they indicated that they were directed by Thor [Fiber] to call PVI's technical and customer support office for service and assistance with their Thor [Fiber] products.

(Doc. 15 at 3). Thor Fiber disputes having ever directed its customers to call PVI for technical support. (Doc. 25 at 13). However, the point is moot, as it is not evidence of actual confusion. To the contrary, based on the Fioravanti affidavit, despite the allegedly similar marks (and/or trade dress), customers who purchased Thor Fiber products initially contacted Thor Fiber, not PVI, for support. They were not confused as to the source of their product, even if that source then referred them to PVI.

**IV. Conclusion**

In analyzing the seven elements, the Court finds that, as things now stand, there is little likelihood of confusion between the Thor Fiber marks and PVI's marks. This assessment could change as additional evidence is presented, but for now, PVI has not shown a substantial likelihood of success on the merits, and therefore it has not demonstrated an entitlement to preliminary injunctive relief.

In consideration of the foregoing, it is hereby

**ORDERED** that the Amended Motion for Preliminary Injunction (Doc. 14) filed by the Plaintiff, Pro Video Instruments, LLC, is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on February 8, 2019.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE