# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**PRO VIDEO INSTRUMENTS, LLC,**

      **Plaintiff,**

**v.**                                                          Case No: 6:18-cv-1823-Orl-31LRH

**THOR FIBER, INC.,**

      **Defendant.**

## ORDER

This matter comes before the Court without a hearing on the Motion to Exclude the Report and Testimony of Eli Seggev (Doc. 67) filed by the Defendant, Thor Fiber, Inc. (henceforth, "Thor Fiber), and the response in opposition (79) filed by the Plaintiff, Pro Video Instruments, LLC ("PVI").

**I. Background**

PVI and Thor Fiber are competitors. Both sell electronic equipment used in the processing and distribution of audio and visual signals.

PVI is the registered owner of several federal trademarks, including three that are at issue in this suit: the MINIMOD mark, the MICROMOD mark, and the VECOAX mark. The former is directed to, *inter alia*, video processors and video transmission apparatus, while the latter pair are directed to "RF tuning devices," which are described as "modulators which distribute high definition and standard definition video signals." (Doc. 14 at 3). PVI has sold products bearing the marks in interstate commerce for several years.

Thor Fiber sells two products that purportedly compete with items bearing PVI's trademarks: the H-PCT-MOD (Encoder Modulator) and the HDCOAX.[1] The former purportedly competes with the items bearing PVI's MINIMOD and MICROMOD marks, while the latter purportedly competes with the item bearing PVI's VECOAX mark. PVI contends that Thor Fiber is competing unfairly with its trademarked products.

In its Amended Complaint (Doc. 26), which was filed in December of 2018, PVI asserts three claims of federal trademark unfair competition pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.* – one for each of the three marks (Counts I – III) – and one claim of tortious interference with advantageous contractual relationship[2] (Count IV). In support of its first three claims, PVI has advanced the expert report of Dr. Eli Seggev ("Seggev") which is entitled "Study of Likelihood of Confusion between Pro Video Instruments, LLC and Thor Fiber Modulators, Inc." (henceforth, the "Seggev Survey") (Doc. 67-1). By way of the instant motion, Thor Fiber seeks to exclude the Seggev Survey and Seggev's accompanying testimony.

## II. Legal Standards

### A. Expert Testimony

The admission of expert testimony is governed by Federal Rule of Evidence 702, which provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

---

[1] Unlike PVI's products, Thor Fiber's products do not bear their names, but they are identified by some form of "H-PCT-MOD" and "HDCOAX" on Thor Fiber's website. For purposes of this memo, the Court assumes without deciding that product names, such as "HDCOAX," can cause confusion with recognized trademarks such as "VECOAX".

[2] In Count IV, PVI contends (1) that it had an exclusive manufacturing contract with a particular company and (2) that Thor Fiber interfered with that contract by having the company manufacture Thor Fiber's competing products. (Doc. 26 at 11-12). The Seggev Survey is not purported to address Count IV.

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Federal Rule of Evidence 702. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 591, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). *See also* Rule 402, Fed. R. Evid. ("Irrelevant evidence is not admissible."). The proponent of the opinion testimony has the burden of establishing each precondition to admissibility by a preponderance of the evidence. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005).

### B. Lanham Act Trademark Confusion

The Lanham Act establishes a cause of action for unfair competition based on, *inter alia*, "false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion." 15 U.S.C. § 1125(a). To prevail under 15 U.S.C. § 1125(a), a plaintiff must show (1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two. *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir. 1997) (citing *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512 (11th Cir.1984)).

Within this Circuit, courts generally examine seven factors in determining the likelihood of confusion: "(1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered

the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion." *Alliance Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir.2000). The most persuasive evidence in assessing the likelihood of confusion is proof of actual confusion. *Id.* "The court does not have to consider all of these factors in every case and in some cases, 'new' factors may merit consideration." *Swatch Watch, S.A. v. Taxor, Inc*., 785 F.2d 956, 958 (11th Cir.1986).

### III. Analysis

According to his report, Seggev[3] was retained by PVI "to conduct a consumer survey … to determine whether there is evidence of confusion between its TV modulator and the modulator marketed by Thor Fiber." (Doc. 67-1 at 3). To accomplish this, Seggev used pictures of three products: one apparently from PVI, one apparently from Thor Fiber, and one control product from a third party.[4] (Doc. 67-1 at 9-11). Briefly described, each product is a small metal box with a display screen, numerous buttons and lights bearing labels such as "Power" or "HDMI," plus a varying number of connectors jutting out of one or more sides of the box. (Doc. 67-1 at 11-13).

As sold, and as potential customers would encounter them on the PVI or Thor Fiber websites while shopping, the devices have identifying information. For example, the PVI products have PVI's name and the appropriate mark ("VECOAX," etc.) emblazoned on them, while the Thor Fiber products are adorned with a large "Thor Fiber" logo. (Doc. 67 at 10).

---

[3] According to his resume, Seggev holds a Ph.D. in Marketing and Quantitative Methods. (67-1 at 3).

[4] Seggev did not identify the particular product in each photo.

However, Seggev removed such identifying information from his survey pictures, leaving only the color schemes – primarily black and grey for the Thor Fiber and PVI product pictures and, for some reason, green and yellow for the "control" product. (Doc. 67-1 at 9-11).

Each survey subject was simultaneously shown the altered pictures of either (a) two of the products at issue in this case or (b) one of plaintiff's products and the control product. (Doc. 67-1 at 7-8). After examining the pictures, they were then asked (1) whether the products were made by the same company; (2) whether they were made by companies with a sponsorship or approval relationship; and (3) whether they were made by companies that were affiliated, associated, or connected. (Doc. 67-1 at 8). Survey subjects who answered "yes" to any question were then asked the reason for choosing that answer and not asked the remaining numbered questions. (Doc. 67 at 8). According to the survey, 35 percent of the respondents shown the altered pictures of the PVI and Thor Fiber products thought the items were made by the same company, while only 17 percent of the respondents thought this when presented with the altered pictures of PVI's item and the control item. (Doc. 67-1 at 13).[5] According to Seggev, this is a statistically significant difference. (Doc. 67-1 at 13).

PVI contends the Seggev Survey is admissible "because it will be helpful to the jury in assessing the overall impression created by the parties' uses of the marks as well as actual confusion from that overall impression." (Doc. 79 at 2). But the Seggev Survey does not include any of the marks at issue. Seggev removed those marks from the pictures of the PVI products and did not include the Thor Fiber product names/marks in the pictures examined by the respondents. Thus there is no possible way for the survey "to assess the overall impression

---

[5] The most common explanation given for determining the PVI and Thor Fiber items were made by the same company was that they had similar appearances. (Doc. 67-1 at 14).

created by the parties' use of the marks."  Nor can the survey assess "actual confusion," as it does not even present the items as they are actually sold – *i.e.*, with the parties' identifying information included.  Moreover, according to PVI's tortious interference claim, the same third party did the manufacturing of both sets of items, suggesting another reason (besides their essentially identical functions) the underlying products have similar appearances – especially when, as black and grey products, they are compared to a green and yellow product.  (Doc. 26 at 11-12).

PVI has not met its burden of demonstrating that the Seggev Survey would be helpful to the jury.  Accordingly, it is hereby

**ORDERED** that the Motion to Exclude the Report and Testimony of Eli Seggev (Doc. 67) is **GRANTED**, and the Seggev Survey will be excluded.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on March 30, 2020.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE