# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**PRO VIDEO INSTRUMENTS, LLC,**

        **Plaintiff,**

**v.**                                           **Case No:   6:18-cv-1823-Orl-31LRH**

**THOR FIBER, INC.,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

      This cause came on for consideration without oral argument on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **DEFENDANT THOR FIBER, INC.'S MOTION FOR ATTORNEY'S FEES (Doc. 176)** |
| **FILED:** | **May 18, 2020** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

| | |
|---|---|
| **MOTION:** | **DEFENDANT THOR FIBER, INC.'S MOTION FOR COSTS PURSUANT TO BILL OF COSTS (Doc. 175)** |
| **FILED:** | **May 18, 2020** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED IN PART AND DENIED IN PART**.

## I.      BACKGROUND.

On October 26, 2018, Plaintiff Pro Video Instruments, LLC instituted this action against Defendant Thor Fiber, Inc., asserting multiple claims for federal trademark infringement, trade dress infringement, common law trademark infringement, and a claim for tortious interference.   Doc. 1. Plaintiff thereafter filed an amended complaint, dropping several claims, including the claim for trade dress infringement; the remaining claims include federal trademark unfair competition and tortious interference with contractual relations.   Doc. 26.

On April 22, 2020, the Court entered summary judgment in favor of Defendant and against Plaintiff on all counts of the amended complaint, and judgment was entered in favor of Defendant the following day.   Docs. 170, 171.

On May 18, 2020, Defendant filed a Motion for Attorney's Fees pursuant to 15 U.S.C. § 1117(a) of the Lanham Act, supported by evidence.   Doc. 176; Docs. 176-1 through 176-7.[1] Defendant seeks a total of $317,454.00 in attorney's fees.   Docs. 176, 187.   Defendant also filed a motion for taxation of costs, seeking to recover a total of $6,133.75 in costs as the prevailing party. Doc. 175.   That motion is supported by a proposed bill of costs and several invoices.   Doc. 175-1. Plaintiff opposes both motions.   Docs. 179, 180.

The motion for attorney's fees and motion for taxation of costs were referred to the undersigned for issuance of a Report and Recommendation, and the matters are ripe for review. For the reasons discussed herein, I respectfully recommend that the motion for attorney's fees be denied, and that Defendant's request for costs be granted in part and denied in part, as outlined herein.

---

[1] Defendant was granted an extension of time up to and including May 18, 2020 to file its motion for attorney's fees and any application for costs.   Doc. No. 174.

## II.     LEGAL STANDARDS.

### A.     Attorney's Fees.

Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."   15 U.S.C. § 1117(a).   "[T]o be an 'exceptional case' under the Lanham Act requires only that a case 'stands out from others,' either based on the strength of the litigating positions or the manner in which the case was litigated."   *Tobinick v. Novella*, 884 F.3d 1110, 1118 (11th Cir. 2018) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).   Whether a case is exceptional should be determined based upon a preponderance of the evidence.   *Id.* at 1117.

Even in exceptional cases, the decision whether to award attorneys' fees remains within the discretion of the Court.   *Id.* (citing *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994)).   The determination requires consideration of the totality of the circumstances and must be made on a case-by-case basis.   *Octane Fitness*, 572 U.S. at 554.   Court consider several factors, which include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."   *Id.* at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 at 534 n.19 (1994)).

"A case will not qualify as exceptional under the Lanham Act merely because one side has zealously pursued or defended its claim. . . ."   *Tobinick*, 884 F.3d at 1119.   Indeed, it is only in "the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees."   *Octane Fitness*, 572 U.S. 555.

B. <u>Costs</u>.

Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "Under Rule 54(d), there is a strong presumption that the prevailing party will be awarded costs." *Mathews v. Crosby*, 480 F.3d 1265, 1276 (11th Cir. 2007) (citing *Arcadian Fertilizer, L.P. v. MPW Indus. Serv., Inc.*, 249 F.3d 1293, 1296 (11th Cir. 2001)). "[A] district court needs a 'sound basis' to overcome the strong presumption that a prevailing party is entitled to costs." *Id.* at 1277 (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023–24 (11th Cir. 2000)). Such costs, however, may not exceed those permitted by 28 U.S.C. § 1920, which delineates the allowable costs as:

(1)  Fees of the clerk and marshal;

(2)  Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3)  Fees and disbursements for printing and witnesses;

(4)  Fees for exemplification and costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5)  Docket fees under 28 U.S.C. § 1923;

(6)  Compensation of court appointed experts, interpreters, and special interpretation services.

A court cannot award costs other than those specifically authorized in § 1920, unless authorized by another applicable statute. *See U.S. E.E.O.C. v. W&O, Inc.,* 213 F.3d 600, 620 (11th Cir. 2000) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987)).

"The petitioner bears the burden to show that expenses are 'necessary,' and if the petitioner satisfies that burden, the burden shifts to the respondent to establish that the expenses are 'clearly inappropriate.'" *Cunningham v. Cunningham*, No. 3:16-cv-1349-J-34JBT, 2017 WL 6942653, at *1 (M.D. Fla. Dec. 15, 2017), *report and recommendation adopted*, 2018 WL 398578 (M.D. Fla. Jan. 12, 2018) (citation omitted).

## III.    ANALYSIS.

### A.    Motion for Attorney's Fees.[2]

As discussed above, under *Octane Fitness*, the Court evaluates two factors in determining whether a case is exceptional.  First, the Court considers whether a case stands out as exceptional based on the substantive strength of a party's litigating position.  Second, the Court considers whether the case stands out as exceptional based on the unreasonable manner in which the case was litigated.  Here, Defendant argues that this case is exceptional based on both factors.  Doc. 176. Plaintiff opposes both of these contentions.  Doc. 179.  Defendant's arguments are addressed in turn.

### 1.    Strength of the Parties' Litigating Positions.

"[T]he superiority of a party's litigating position is a major determinant in whether a case will be deemed exceptional." *Ferrara Candy Co. v. Exhale Vapor LLC*, No. 2:17-cv-512-FtM-38MRM, 2018 WL 6261504, at *6 (M.D. Fla. July 30, 2018).  However, "[t]here is no precise rule or formula for determining whether a Lanham Act case is 'exceptional' based on its lack of substantive strength.  Instead, as with the other *Octane Fitness* factors, courts must use their discretion in considering the totality of the circumstances." *FCOA, LLC v. Foremost Title &*

---

[2] Plaintiff does not dispute that Defendant is the prevailing party for purposes of an award of attorney's fees under the Lanham Act.  *See* Doc. 179, at 1.

*Escrow Servs., LLC*, No. 17-23971-CIV, 2019 WL 7790856, at *3 (S.D. Fla. Oct. 17, 2019) (citation omitted).

"Under the Lanham Act, some courts have awarded fees when a claim was found to be objectively baseless. . . . Other courts have awarded fees where a plaintiff offered 'extremely weak arguments' to establish that its marks were protectable." *Id.* (citations omitted) (collecting authority). However, so long as the plaintiff's case is "at least colorable," or there was a "reasonable basis" for the plaintiff's claim, courts in this Circuit have found that exceptional circumstances do not exist warranting an award of fees under the Lanham Act. *See id. See, e.g.*, *Sream, Inc. v. CIJ Enters., Inc.*, No. 18-80860-CIV, 2020 WL 1033351, at *4 (S.D. Fla. Mar. 3, 2020) ("[E]ven though Plaintiffs did not prevail, there appears to have been a reasonable basis for Plaintiffs to bring an infringement action in this instance."); *Plant Food Sys., Inc., v. AgroSource, Inc.*, No. 16-CV-80326, 2017 WL 4155356, at *6 (S.D. Fla. July 19, 2017) (declining to award fees where losing party's position during preliminary injunction hearing was not "frivolous or completely unsupported by the evidence"); *Fla. Van Rentals Inc. v. Auto Mobility Sales, Inc.*, No. 8:13-cv-1732-T-36EAJ, 2015 WL 4887550, at *3 (M.D. Fla. Aug. 17, 2015) ("[A]lthough the totality of the evidence supporting the validity of [the] marks was weak, [p]laintiffs' overall case was at least colorable," and was not objectively unreasonable or frivolous).

Here, Defendant essentially takes the position that its case was substantially stronger than Plaintiff's based on the Court's rulings denying Plaintiff's motion for preliminary injunction and granting Defendant's motion for summary judgment. Doc. 176, at 4–9; *see* Doc. 35 (Order denying Plaintiff's motion for preliminary injunction); Doc. 170 (Order granting Defendant's motion for summary judgment). Defendant claims that from the outset of this case, there was no likelihood of consumer confusion between Plaintiff's and Defendant's products at issue, and that, in any event,

Defendant's fair use defense has precluded Plaintiff's claims since the beginning.   Doc. 176, at 5. Defendant also argues that all of the evidence that the Court considered at the preliminary injunction stage was the same evidence relied on at summary judgment, which was "publicly available information that Plaintiff could have easily learned prior to filing suit."   *Id.* at 8–9.

As an initial matter, merely because summary judgment was entered in Defendant's favor does not compel the conclusion that this case was "exceptional" under the Lanham Act.   *See FCOA, LLC*, 2019 WL 7790856, at *6; *see also New Flyer Indus. Canada ULC v. Rugby Aviation, LLC*, No. C18-299RSL, 2020 WL 5203580, at *2 (W.D. Wash. Sept. 1, 2020) "[A] case is not exceptional simply because the court granted summary judgment. . . . "[O]therwise[,] every Lanham Act case in which summary judgment was granted would be considered an 'exceptional' case.").   The same holds true regarding the motion for preliminary injunction.   *See Hard Rock Cafe Int'l USA, Inc. v. RockStar Hotels, Inc*., No. 17-CV-62013, 2019 WL 3412155, at *4, *6 (S.D. Fla. May 20, 2019) (accepting the district court's determination that the plaintiff had failed to establish a likelihood of success on the merits at the preliminary injunction stage, nonetheless concluding that the case was not "exceptional" warranting fees under the Lanham Act because Plaintiff's arguments "were not completely unsupported by the evidence"), *report and recommendation adopted*, 2019 WL 3408888 (S.D. Fla. June 4, 2019).

Defendant primarily relies on the Court's findings in the Order on the motion for summary judgment that Plaintiff's and Defendant's marks were dissimilar and that there was a lack of evidence of consumer confusion.   *See* Doc. 176, at 5–6 (discussing summary judgment order, Doc. 170, at 22–23, 25, 29, 34).   However, while there is no dispute that Defendant prevailed at summary judgment, that does not mean that "the merits of Plaintiff's lawsuit were objectively baseless or that the arguments presented were extremely weak."   *See FCOA, LLC*, 2019 WL 7790856, at *3.

Notably, the Court did not find in its Order on the motion for summary judgment that Plaintiff's case was frivolous, lacked a reasonable basis, or was not colorable.   *See* Doc. 170.   Further, as Plaintiff points out, the Court found that at least some of the factors under consideration in the likelihood of confusion analysis weighed in Plaintiff's favor.   *See id.* (finding Plaintiff's marks entitled to presumption of validity; finding strength of the mark was suggestive rather than descriptive and weighed in Plaintiff's favor; finding that the parties' marks contained similarities, even though such similarities were outweighed by the marks' differences; acknowledging concession by Defendant that the parties' channels of trade and customers overlap, and that the advertising methods are similar, which both weighed in Plaintiff's favor).   Therefore, I do not find that the Court's Orders on the motion for summary judgment and the motion for preliminary injunction render this case "exceptional" under the Lanham Act.   *See FCOA, LLC*, 2019 WL 7790856, at *3.

Defendant also argues that the weakness of Plaintiff's litigation position is further demonstrated by:   Plaintiff's attempt to insert trade dress issues into this case (including Plaintiff's expert's manufacturing of evidence) which "needlessly complicated" the case; Plaintiff's claim of "lost sales" causing Defendant to incur unnecessary legal fees; and Plaintiff's unreasonable conduct as to potential settlement of the case.   Doc. 176, at 10–13.   On review, I do not find that these assertions render the case "exceptional" under the Lanham Act.

As to Plaintiff's alleged impermissible insertion of trade dress issues into this case, Defendant claims that this issue "needlessly complicated" the case because Plaintiff asserted the claim in the initial complaint; dropped the claim in the amended complaint; but Plaintiff's principals continually testified at deposition regarding the "look" of products and packaging.   *Id.* at 10–11. However, as Plaintiff argues in response, Defendant provides no example of how the trade dress

claims "needlessly complicated" the case or how Plaintiff's litigating position was weakened based on the pursuit of the trade dress claim.   Accordingly, I find this contention unpersuasive.

Defendant next argues that Plaintiff's expert, Dr. Eli Seggev, "manufactured evidence" by altering pictures of the parties' products, and only reviewed the original complaint, which still included the trade dress claim later dropped by amendment to the complaint.   *Id.* at 11.   Defendant claims that it was therefore "forced" to file a *Daubert* motion because Dr. Seggev's report was "completely irrelevant" to the case.   *Id.*

On review, the record does not conclusively support Defendant's argument.   The undersigned has reviewed the Court's Order excluding Dr. Seggev's report and testimony.   Doc. 160.   As Plaintiff argues, there is no indication from the Court's Order that Dr. Seggev "manufactured" evidence, nor did the Court make any other findings that would render Dr. Seggev's survey and report subject to an "exceptional" finding.   *See id.*   Moreover, Defendant points to no authority supporting its position that the exclusion of an expert report in circumstances akin to the present case would result in an "exceptional" case finding under the Lanham Act.   *See* Doc. 176, at 11–12.   Without such evidence or authority, the undersigned declines to so find here.   *See, e.g.*, *FCOA, LLC*, 2019 WL 7790856, at *5 (rejecting argument that the plaintiff manufactured evidence, warranting fees under the Lanham Act, when there was "no evidence to support such a serious allegation and Defendant has failed to direct the Court to anything in the record for support").

Defendant's contention that Plaintiff's claim of "lost sales" unnecessarily protracted this litigation is equally unpersuasive.   Defendant argues that Plaintiff pursued a "lost sales" theory during discovery, and after "considerable" time was spent on this issue, Defendant produced an expert report "definitively" showing that Plaintiff had not suffered a drop in sales.   Doc. 176, at 12–13.   As Defendant acknowledges, however, the Court did not reach the issue of damages in this

case.  *See id.* at 12.  Moreover, even considering Defendant's assertions regarding Plaintiff's pursuit of "lost sales," Defendant once again points to no authority suggesting that an evolving theory of damages during discovery renders a case "exceptional" under the Lanham Act.  *See id.* at 12–13.  *See also Hard Rock Cafe Int'l USA, Inc.*, 2019 WL 3412155, at *7 (citation and quotation marks omitted) ("[F]ees are awarded [under the Lanham Act] on litigation conduct that goes beyond mere stonewalling, excessive discovery demands, or otherwise burdensome litigation strategies."), *report and recommendation adopted*, 2019 WL 3408888 (S.D. Fla. June 4, 2019).

Finally, Defendant relies on Plaintiff's conduct during settlement negotiations to argue that the strength of its litigating position was "far superior" to that of Plaintiff.  Doc. 176, at 13–14. This argument is unpersuasive.  First, Plaintiff's response calls into question Defendant's version of events during settlement discussions.  *See* Doc. 179, at 10 ("The defendant has twisted the parties' settlement negotiations to intentionally make [Plaintiff] look bad, when, in reality, [Plaintiff] was willing to settle this claim for the nominal amount of $1 if [Defendant] agreed to stop utilizing the trademarks at issue.").  Second, because settlement discussions are by nature confidential, there is nothing on the public docket to support Defendant's position on how settlement discussions proceeded.  Finally, even if the undersigned found that Plaintiff refused to settle the matter during negotiations with Defendant, that would still not mandate an "exceptional" finding under the Lanham Act.  *See Tobinick*, 884 F.3d at 1119 (finding that a case is not exceptional "merely because one side has zealously pursued or defended its claim."); *see also Canas v. Flash Dancers, Inc.*, No. 3:16-cv-393-J-32JRK, 2020 WL 588290, at *7 (M.D. Fla. Feb. 6, 2020) ("Refusing to settle and putting a plaintiff to its burden is not an exceptionally unreasonable manner of litigating this Lanham Act case."); *Fla. Van Rentals, Inc.*, 2015 WL 4887550, at *3 ("[A]lthough Plaintiffs refused to enter into a settlement agreement which Auto Mobility deems was fair and

reasonable, as noted above, Plaintiffs' case was at least colorable, so Plaintiffs were entitled to their day in court.").[3]

In sum, in my view, none of the conduct complained of by Defendant regarding the strength of the parties' respective litigating positions, considered individually or collectively, renders this case "exceptional" under the Lanham Act.  *See FCOA, LLC*, 2019 WL 7790856, at *5 (declining to award fees under the Lanham Act, finding as follows:  "There is no evidence that Plaintiff attempted to coerce a settlement from Defendant, to do harm to a competitor, or that Plaintiff presented frivolous arguments.   The record merely shows that Plaintiff filed a lawsuit for trademark infringement, that the parties zealously represented their clients, and that Plaintiff ultimately failed to present sufficient evidence to survive a motion for summary judgment.").[4]

### 2.    *Manner in Which the Case Was Litigated.*

"Under the second prong of the *Octane Fitness* test, a case can be found to be 'exceptional' if it was litigated in an unreasonable manner."  *Hard Rock Cafe Int'l USA, Inc.*, 2019 WL 3412155,

---

[3] Defendant relies on three cases from federal district courts in California to supports its argument that Plaintiff acted unreasonably during settlement negotiations and that settlement is a proper consideration for the Court in awarding fees under the Lanham Act.   Doc. 176, at 13–14.  *See Abbywho, Inc. v. Interscope Records*, No. CV 06-06724-MMM(JTLX), 2008 WL 11406099 (C.D. Cal. Jan. 7, 2008); *Int'l Bus. Advisors Ltd. v. Payless Drug Stores Nw. Inc.*, No. C-91-1011-VRW, 1993 WL 237414 (N.D. Cal. Jan. 11, 1993); *O'Brien Int'l, Inc. v. Mitch*, No. C 79 0227 (SAW), 1980 WL 30251 (N.D. Cal. June 16, 1980).   However, none of those cases are binding on this Court, and none apply the *Octane Fitness* standard.   Moreover, none are factually analogous to the present case.

[4] Plaintiff also points out that its prior counsel suffered a debilitating medical condition during this litigation, and Plaintiff asks that the Court "not award attorney's fees in favor of [Defendant] based on certain strategy decisions made by [Plaintiff's] former lead counsel who is not capable of providing further insight in response" to the motion for attorney's fees.   Doc. 179, at 7.   While the undersigned is sympathetic to Plaintiff's plight, clients are bound by the conduct of their attorneys.   *See generally Durrett v. Jenkins Brickyard, Inc*., 678 F.2d 911, 916 (11th Cir. 1982) ("Like any other principal, a client may be bound by the acts of his agent, acting within the scope of his authority.").   Accordingly, I have not given any weight in Plaintiff's favor to the considerations regarding its former counsel.

at *6.   In determining whether the case was litigated in an unreasonable manner, courts consider

several factors, some of which include:

> (i) whether the plaintiff failed to conduct an adequate pre-filing investigation or to
> exercise due diligence before filing suit; (ii) whether the plaintiff should have known
> its claim was meritless and/or lacked substantive strength; (iii) evidence that the
> plaintiff initiated litigation to extract settlements from defendants who want to avoid
> costly litigation; (iv) whether a party proceeded in bad faith (noting that bad faith is
> no longer required to support an award of fees but finding the plaintiff" position was
> not reasonable); and (v) the existence of litigation misconduct.

*Id.*   This list is non-exhaustive.   *See id.*

Defendant contends that the manner in which Plaintiff litigated this case renders the matter

"exceptional" under the Lanham Act.   Doc. 176, at 14.   Defendant relies on four examples in

support:   (1) Plaintiff's alleged display of Defendant's products on Plaintiff's website for a "Black

Friday" sale; (2) Plaintiff's alleged use of Defendant's content on a website:   peterflowers.com; (3)

Plaintiff's alleged use of a "Thor" domain name to misdirect customers; and (4) Plaintiff's alleged

use of "Thor"-related keywords to misdirect customers.   *Id.* at 15–18.   Defendant argues that these

four examples demonstrate that Plaintiff was engaged in an "aggressive campaign seeking to harm

a competitor."   *Id.* at 17.   Therefore, according to Defendant, an award of fees is warranted "to

advance considerations of compensation and deterrence."   *Id.*

In response, Plaintiff urges the Court to reject Defendant's reliance on "unsupported

assertions unrelated to the litigation or to [Plaintiff's] litigation conduct," which was not even

"significant enough for [Defendant] to assert it in a counterclaim."   Doc. 179, at 11.   Plaintiff then

discounts each of Defendant's assertions, arguing that the record does not support Defendant's

claims.   *Id.* at 12–14.

On review, I recommend the Court find that Defendant, based on the only four examples provided regarding Plaintiff's use or display of Defendant's products or content, has not established that Plaintiff engaged in unreasonable litigation conduct.

As an initial matter, Defendant did not raise any counterclaims against Plaintiff in this case, in particular as it relates to Plaintiff using or displaying any of Defendant's products or content in any fashion.  *See* Doc. 28.  Nor did the Court address or rely on any of Defendant's allegations regarding Plaintiff's use or display of Defendant's products in ruling on the motion for preliminary injunction or the motion for summary judgment.  *See* Docs. 35, 170.  Therefore, the Court should decline to consider Defendant's allegations that have not been litigated on the merits in this case. *Cf. Munchkin, Inc. v. Luv n' Care, Ltd.*, 960 F.3d 1373, 1378 (Fed. Cir. 2020) (citation and quotation marks omitted) ("[D]istrict courts have wide latitude to refuse to add to the burdens of litigation by opening up issues that have not been litigated but are asserted as bases for a fee award."); *Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1357 (Fed. Cir. 2019)  ("[T]he district court's distinctive familiarity with the issues relevant to fees due to its extensive work on the merits of the case—is weaker when the award of fees rests on a basis not meaningfully considered before fees were sought after the merits were resolved.").  *But see CarMax Auto Superstores, Inc. v. StarMax Fin., Inc.*, 192 F. Supp. 3d 1279, 1284 (M.D. Fla. 2016) ("[T]he unreasonable conduct referenced by the *Octane* Court extends to all circumstances surrounding the litigation event, not solely the conduct within the confines of the immediate litigation.").[5]

---

[5] Defendant relies upon *CarMax* (Doc. 176, at 15), however the facts of *CarMax*, which involved a party who defaulted and continued to deliberately and intentionally infringe on a mark, despite years of pre-suit notification and communication, were far more egregious than the facts Defendant relies upon.  And while *CarMax* holds that an "exceptional case" warranting attorney's fees can be based on the "totality of the circumstances," *see* 192 F. Supp. 3d at 1284, those circumstances directly revolved around the claims asserted in the underlying litigation.  Here, in contrast, Defendant seeks an award of fees in large part due to purported acts of Plaintiff that were not raised nor considered during the course of litigation.  I therefore find that *CarMax* does not support Defendant's claim for attorney's fees.

Even if the Court considers Defendant's four examples of Plaintiff's conduct in assessing whether Plaintiff litigated this case in an unreasonable manner,[6] Defendant still has not established that an award of fees in its favor is proper based on this conduct.   For one, Plaintiff disputes these assertions, and the parties rely on conflicting evidence on whether Plaintiff did or did not engage in the conduct Defendant alleges.   *Compare* Doc. 176, at 15–18, *with* Doc. 179, at 12–14.   For another, Defendant fails to explain how Plaintiff's alleged conduct demonstrates that Plaintiff acted unreasonably *in this litigation*.   In particular, Defendant argues, in a conclusory fashion, that Plaintiff's alleged actions had the potential to associate Plaintiff with Defendant in the marketplace, which is inconsistent with Plaintiff's reason for filing this lawsuit in the first place.   Doc. 176, at 17.   Defendant then states that Plaintiff's conduct demonstrates "an aggressive campaign seeking to harm a competitor."   *Id.*   I find that Defendant's unsubstantiated assertions fall short of demonstrating that Plaintiff litigated this case in an unreasonable manner, warranting fees under the Lanham Act.   *Cf. FCOA, LLC*, 2019 WL 7790856, at *5 ("Because Defendant relies on nothing more than unsubstantiated inferences and allegations, there is nothing to support a conclusion that Plaintiff litigated this case in an unreasonable manner.").

Accordingly, I recommend the Court reject Defendant's contention that this case is "exceptional" based on the four examples it provides regarding the manner in which Plaintiff litigated the case.

In sum, neither factor under *Octane Fitness*—the strength of the parties' respective litigation positions or the manner in which Plaintiff litigated this case—weigh in favor of finding this case

---

[6] I note that in its affirmative defenses, Defendant does assert that "Plaintiff is estopped from claiming that Defendant's trade dress is infringing or has caused Defendant harm due to Plaintiff's posting of Defendant's trade dress on Plaintiff's website."   Doc. 28, at 7.

"exceptional" under the Lanham Act.   Therefore, I respectfully recommend that the Court deny Defendant's motion for attorney's fees under 15 U.S.C. § 1117(a).

  B. <u>Motion for Costs</u>.

  Defendant seeks to recover the following costs:   (1) $4,665.75 in fees for printed or electronically recorded transcripts necessarily obtained for use in the case; and (2) $1,468.00 in fees for service of summonses and subpoenas.   Doc. 175-1, at 1.   Plaintiff concedes that Defendant is the prevailing party and entitled to costs.   Doc. 180.   However, Plaintiff claims that $2,391.50 of the costs Defendant seeks are not recoverable.   *Id.* at 5.   Each category of requested costs is addressed in turn.

  *1. Fees for Transcripts Necessarily Obtained for Use in the Case.*

  Defendant asserts that it "incurred costs in the amount $4,665.75 for depositions necessarily obtained for use in the case, including the depositions of the parties hereto and their principals, the deposition of an employee of Plaintiff with direct knowledge of relevant issues and the deposition of Plaintiff's damages expert."   Doc. 175, at 2.   Attached to the proposed bill of costs, Defendant includes the following supporting invoices:

- Invoice for the deposition of "Thor Fiber, Inc" on 9/11/2019, for a total charge of $813.75 (Doc. 175-1, at 2);

- Invoice for the deposition of Silvia Fioravanti on 8/27/2019, for a total charge of $1,020.70   (Doc. 175-1, at 4);

- Invoice for the deposition of Luca Zanetti on 8/28/2019, for a total charge of $837.35 (Doc. 175-1, at 5);

- Invoice for the deposition of Peter Gampel on 10/03/2019, for a total charge of $655.30 (Doc. 175-1, at 6);

- Invoice for the deposition of Karina Betancourt on 10/18/2019, for a total charge of $357.40 (Doc. 175-1, at 7); and

- Invoice for the deposition of Silvia Fioravanti on 11/04/2019, for a total charge of $981.25 ($566.50 of which relates to her capacity as representative of Radio Peter Flowers LLC) (Doc. 175-1, at 8).

In its response, Plaintiff takes issue with two particular depositions—Karina Betancourt, and Silvia Fioravanti in her capacity as corporate representative of non-party Radio Peter Flowers LLC—and does not otherwise address the invoices related to the remaining deponents.   Doc. 180, at 2–3.   In particular, Plaintiff contends that the costs associated with deposing Ms. Betancourt are not recoverable because the deposition was for investigation purposes only, and Ms. Betancourt's deposition related to "products not named in the Complaint."   *Id.* (citing Doc. 82, at 2 (Defendant's response to a motion for protective order)).   Plaintiff also argues that Defendant did not rely on Ms. Betancourt's deposition transcript in the motion for summary judgment or otherwise in this case. *Id.* at 2–3.   Plaintiff further contends that the same analysis applies to the deposition of Ms. Fioravanti in her capacity as corporate representative for non-party Radio Peter Flowers LLC, which was solely related to Defendant's investigation and was not necessary.   Doc. 180, at 2–3.

I find Plaintiff's contentions unpersuasive.   As it relates to Karina Betancourt, according to Plaintiff, Ms. Betancourt is a "rank-and-file" employee of Plaintiff.   Doc. 80, at 2, 3.   During discovery, Plaintiff sought a protective order preventing Ms. Betancourt's deposition.   *See id.*   The Court denied that request, finding that Plaintiff had not carried its burden for issuance of a protective order, and even if Defendant intended to ask Ms. Betancourt about products not at issue in this litigation, "Plaintiff ha[d] not established that such inquiry would be completely irrelevant in this case."   Doc. 83.   The same holds true here.   Plaintiff has not demonstrated that Ms. Betancourt's

deposition was wholly unrelated to any issues in this case at the time that it was taken.  *See Watson v. Lake Cty.*, 492 F. App'x 991, 996–97 (11th Cir. 2012) ("[E]ven where a deposition is not ultimately used as part of a prevailing party's case, we have held that the costs of the deposition are taxable under § 1920 where no evidence shows that the deposition was unrelated to an issue in the case at the time it was taken." (citing *W&O*, 213 F.3d at 622)).[7]

Likewise, as it relates to the deposition of Ms. Fioravanti, in her capacity as corporate representative for Radio Peter Flowers LLC, Plaintiff has not demonstrated that such deposition was wholly unrelated to the issues raised in this case.  Notably, Ms. Fioravanti is Plaintiff's manager. *See* Doc. 170, at 15.  Issues regarding third party Radio Peter Flowers LLC were raised during discovery in this case.  *See* Doc. 81.  And, the Court found that information regarding Peter Flowers could be relevant.  *See id.* at 7.  Thus, Plaintiff has not demonstrated that Ms. Fioravanti's deposition, in her capacity as corporate representative for Radio Peter Flowers LLC, was wholly unrelated to any issues in this case at the time that it was taken.  *See Watson*, 492 F. App'x at 996–97 (citing *W&O*, 213 F.3d at 622).

Nonetheless, and although not raised by Plaintiff, several costs related to the deposition invoices are not recoverable under § 1920, including charges for condensed transcripts, searchable OCR exhibits, and shipping and handling.  *See, e.g.*, *id.* at 997 (shipping costs related to deposition not taxable under § 1920); *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, No. 6:14-cv-2004-Orl-40KRS, 2018 WL 1863778, at *11 (M.D. Fla. Mar. 26, 2018), *report and recommendation adopted*, 2018 WL 1863779 (M.D. Fla. Apr. 13, 2018) (citations omitted) ("Charges for condensed transcripts, summaries, scanning, and CD litigation packages are typically not recoverable because

---

[7] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority.  *See* 11th Cir. R. 36–2.

they are costs incurred for the party's convenience."); *Korsing v. United States*, No. 16-22190-CIV, 2019 WL 2255577, at *6 (S.D. Fla. Feb. 4, 2019), *report and recommendation adopted*, 2019 WL 2254951 (S.D. Fla. Feb. 20, 2019) ("[D]elivery of transcripts, as well as miscellaneous costs associated with depositions such as exhibit costs or condensed transcripts, are not taxable because they are incurred for convenience of counsel, as opposed to being necessarily obtained for use in the case."). Accordingly, I recommend that the Court *sua sponte* reduce the costs requested for transcripts necessarily obtained for use in the case by $247.10. *See* Doc. 175-1, at 2 ($35.00 charge for condensed transcript; $122.10 for searchable OCR exhibits; $40.00 for shipping and handling); Doc. 175-1, at 4 ($25.00 for shipping and handling); Doc. 175-1, at 5 ($25.00 for shipping and handling). Therefore, the total amount of taxable costs in this category should be reduced to $4,418.65. *See* Doc. 175-1 ($4,665.75 – $247.10 = $4,418.65).

       2.    *Fees for Service of Summons and Subpoena.*

Defendant asserts that it "incurred $1,468.00 in costs for service of deposition and document subpoenas, as detailed in the attachments to the Bill of Costs." Doc. 175, at 2. Defendant provides no further explanation in the motion for taxation of costs. *See id.* The attachments to the proposed bill of costs include invoices for:

- "Karina Betancourt c/o Pro Video Instruments LLC," on 9/13/2019, which includes $125.00 for "Orlando, FL Subpoena Rush" and a $53.00 "Witness Fee" (Doc. 175-1, at 9);

- Karina Betancourt as "individual/person," on 9/24/2019, which includes $125.00 for "Orlando, FL Subpoena Rush" and a $53.00 "Witness Fee" (Doc. 175-1, at 10);

- Bellsouth Telecommunications LLC, c/o CT Corporation System, Registered Agent, on 9/24/2019, which includes a $50 charge for "Subpoena Broward County" (Doc. 175-1, at 11);

- "Karina Betancourt c/o Pro Video Instruments LLC," on 10/01/2019, which includes a charge of $125.00 for "Orlando, FL Subpoena Same Day Rush (Doc. 175-1, at 12);

- "Karina Betancourt c/o Pro Video Instruments LLC," on 10/08/2019, which includes a $55.00 witness fee and $85.00 charge for "wait time" (Doc. 175-1, at 13);

- Wells Fargo Bank, N.A. c/o Corporation Service Company, on 10/09/2019, for a total of $90.00 for "Tallahassee, FL Subpoena" (Doc. 175-1, at 14);

- Radio Peter Flowers LLC c/o Law Offices of Juan De La Torre on 10/25/2019, including $125.00 for "Orlando, FL Subpoena Rush"; a $42.00 witness fee, and a $150.00 charge for "Additional Address Same Day Priority" (Doc. 175-1, at 15);

- Cloudfare c/o Legal Dept on 10/25/2019, which includes a $150.00 charge for "San Francisco, CA Subpoena Rush" (Doc. 175-1, at 16);

- Infomart2000 Corp, d/b/a 3DCart c/o Gonzalo Gil on 10/24/2019, for a total of $90.00 for "Subpoena Broward County Rush" (Doc. 175-1, at 17); and

- Godaddy.com LLC c/o Compliance Dept on 10/25/2019, which includes a charge of $150.00 for "Scottsdale, AZ, Subpoena Rush" (Doc. 175-1, at 18).

Plaintiff contends that Defendant's requested costs for subpoenas are unreasonable.   Doc. 180, at 3.   Plaintiff also argues that these were "subpoenas sent to non-parties in furtherance of the defendant's fishing expedition for counterclaims that were never asserted," and that costs should not be awarded for an "unsuccessful counterclaim investigation."   *Id.* at 3–4.   Plaintiff further notes that Defendant did not rely on any documents or depositions from these non-parties in this

case.  *Id.* at 4.   Plaintiff also argues that the subpoena costs impermissibly exceed the rate charged by the United States Marshal, and therefore must be reduced accordingly.  *Id.*  Finally, Plaintiff argues that Defendant fails to explain the multiple service attempts on Karina Betancourt, or the rush and priority fees for which it seeks to recover.  *Id.*

Plaintiff is correct that it is entirely unclear from Defendant's motion or attachments why Defendant subpoenaed Bellsouth, Wells Fargo, Cloudfare, Infomart, or Godaddy.com.  Nor does the record reflect why these entities were subpoenaed, and the Court's rulings in the case do not reflect any discussion of these entities.  *See, e.g.*, Docs. 25, 35, 122, 123, 160, 167, 170. Accordingly, absent some explanation from Defendant, I recommend the Court disallow these costs under § 1920.  *See, e.g.*, *George v. GTE Directories Corp.*, 114 F. Supp. 2d 1281, 1299 (M.D. Fla. 2000) (stating permissible costs under § 1920 include fees "for each subpoena served on a witness the Plaintiff could have reasonably believed was at least partially necessary to the litigation," but finding non-recoverable costs for the appearance of individuals not reasonably necessary to trial); *Cunningham*, 2017 WL 6942653, at *3, *report and recommendation adopted*, 2018 WL 398578 (M.D. Fla. Jan. 12, 2018) (finding the moving party's failure to provide any information regarding the substance of the witness's testimony prevented the court from determining whether the witness was reasonably necessary, and therefore denying subpoena costs); *see also Vista Clinical Diagnostics, LLC v. Markovic*, No. 6:17-cv-1491-Orl-41TBS, 2018 WL 4760821, at *2 (M.D. Fla. Aug. 7, 2018) ("Plaintiffs have the burden of establishing that the costs they seek are appropriate."), *report and recommendation adopted*, 2019 WL 1383514 (M.D. Fla. Mar. 27, 2019).

As it relates to the summons and subpoena costs for Ms. Betancourt and Ms. Fioravanti, as discussed above, the undersigned finds that the record fails to establish that the depositions of Ms. Betancourt and Ms. Fioravanti (in her capacity as representative for Peter Flowers) were wholly

unrelated to any issues in this case at the time they were taken. Accordingly, the undersigned likewise concludes that the summonses, subpoenas, and witness fees related to those depositions may likewise be recoverable under § 1920.

Nonetheless, as Plaintiff argues, Defendant has failed to establish why multiple service attempts on Ms. Betancourt were permissible. *See Cadle v. Geico Gen. Ins. Co.*, No. 6:13-cv-1591-ORL-31GJK, 2015 WL 4352048, at *3 (M.D. Fla. July 14, 2015) (citations omitted) ("[I]t is imperative that the party seeking costs for multiple service attempts provide evidence justifying the need for multiple service attempts."). Moreover, as Plaintiff argues, Defendant has not established that all of the fees for the summons and subpoena related to Ms. Betancourt and Peter Flowers are recoverable, namely fees for "rush" service or fees for "Additional Address Same Day Priority." *See, e.g.*, *James v. Wash Depot Holdings, Inc*., 242 F.R.D. 645, 650 (S.D. Fla. May 14, 2007) (fees for rush service generally not recoverable); *Simmons v. City of Orlando*, No. 6:16-cv-1909-Orl-41KRS, 2018 WL 4938627, at *4 (M.D. Fla. Sept. 26, 2018), *report and recommendation adopted*, 2018 WL 5079877 (M.D. Fla. Oct. 18, 2018) (absent explanation, "additional address" fee not recoverable under § 1920). In addition, Plaintiff is correct that although recovery of the cost of private process servers is authorized under 28 U.S.C. § 1920(1), these rates must not exceed the costs charged by the United States Marshal's Service to effectuate service. *See James*, 242 F.R.D. at 649 (citing *W & O, Inc.*, 213 F.3d at 623–24). The current statutory rate for service by the United States Marshal is $65.00 per hour. *See* 28 C.F.R. § 0.114(a)(3). Finally, although Plaintiff does not explicitly address the "witness fee" that appears on the invoices, under § 1920(3), witness fees are limited to $40 per day. *See Morrison v. Reichhold Chemicals, Inc*., 97 F.3d 460, 463 (11th Cir. 1996) (discussing interplay between 28 U.S.C. § 1920, 28 U.S.C. § 1821, and Fed. Civ. P. 54); *see* 28 U.S.C. §1821(b).

Therefore, I recommend that the Court award fees for service of summons and subpoena only as follows:

- Karina Betancourt:   $65.00 for service of subpoena and a $40.00 witness fee.   (*See* Doc. 175-1, at 9, 10, 12, 13).

- Radio Peter Flowers LLC:   $65.00 for service of subpoena and a $40.00 witness fee. (*See* Doc. 175-1, at 15).[8]

## IV.   RECOMMENDATIONS.

Based on the foregoing, **I RESPECTFULLY RECOMMEND** that the Court do the following:

1. **DENY** Defendant Thor Fiber, Inc.'s Motion for Attorney's Fees (Doc. 176);

2. **GRANT in part and DENY in part** Defendant Thor Fiber, Inc.'s Motion for Costs Pursuant to Bill of Costs (Doc. 175);

---

[8] Should this Court find that Defendant is entitled to recover the summons and subpoena costs related to Bellsouth, Wells Fargo, Cloudflare, Infomart, and Godaddy.com, as discussed herein, at minimum, the fees for multiple service attempts, fees for service at additional addresses, and fees for "rush" subpoenas are not recoverable under § 1920.   *See, e.g., James*, 242 F.R.D. at 650; *Cadle*, 2015 WL 4352048, at *3; *Simmons*, 2018 WL 4938627, at *4, *report and recommendation adopted*, 2018 WL 5079877.   Moreover, the costs for service of process must be reduced to reflect the current statutory rate for service by the United States Marshal of $65.00 per hour.   *See* 28 C.F.R. § 0.114(a)(3).   And the witness fees must be limited to $40 per day.   *See Morrison*, 97 F.3d at 463.   Therefore, the recoverable costs, at minimum, must be reduced to $520.00 for fees for service of summons and subpoena, as follows:

- Karina Betancourt:   $65.00 for service and a $40.00 witness fee.   (*See* Doc. 175-1, at 9, 10, 12, 13).
- Bellsouth Telecommunications LLC:   $50.00 for service of a subpoena.   (*See* Doc. 175-1, at 11).
- Wells Fargo Bank, N.A.:   $65.00 for service of a subpoena.   (*See* Doc. 175-1, at 14)
- Radio Peter Flowers LLC:   $65.00 for service of subpoena and a $40.00 witness fee.   (*See* Doc. 175-1, at 15).
- Cloudfare:   $65.00 for service of subpoena.   (*See* Doc. 175-1, at 16).
- Infomart2000:   $65.00 for service of subpoena.   (*See* Doc. 175-1, at 17).
- Godaddy.com LLC:   $65.00 for service of subpoena.   (*See* Doc. 175-1, at 18).

3.  **AWARD** Defendant $4,628.65 in taxable costs pursuant to 28 U.S.C. § 1920; and

4.  **DENY** the Motion for Costs (Doc. 175) in all other respects.

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on November 2, 2020.

**LESLIE R. HOFFMAN**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished to:

Presiding District Judge
Counsel of Record