**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**PRO VIDEO INSTRUMENTS, LLC,**

      **Plaintiff,**

**v.**                                                                              Case No:    **6:18-cv-1823-Orl-31LRH**

**THOR FIBER, INC.,**

      **Defendant.**

**ORDER**

This matter comes before the Court on Defendant's Motion for Attorney's Fees (Doc. 176); Defendant's Motion for Costs (Doc. 175); Magistrate Judge Leslie R. Hoffman's Report and Recommendation (Doc. 188); Defendant's Objection to the Report and Recommendation (Doc. 189); and Plaintiff's Response to the Objection (Doc. 190).

Upon *de novo* review, the Report and Recommendation is due to be adopted in part.

**I.     Background**

On October 26, 2018, Plaintiff sued Defendant asserting multiple claims for federal trademark infringement, trade dress infringement, common law trademark infringement, and a single claim for tortious interference. (Doc. 1, ¶¶ 53–132 ("**Initial Complaint**")). Following its unsuccessful attempt to obtain a preliminary injunction against Defendant, Plaintiff amended its Initial Complaint, asserting three claims for federal trademark unfair competition and a single claim for tortious interference with contractual relations. (Doc. 26 ("**Amended Complaint**")).

On April 22, 2020, the Court entered summary judgment in favor of Defendant on all counts of the Amended Complaint. (Docs. 170, 171). Defendant now moves for $317,454.00 in attorney's fees pursuant to 15 U.S.C. § 1117(a) of the Lanham Act. (Doc. 176, pp. 20–21; Doc 187-1, p. 4;

Doc. 176-6, p 68). Defendant also moves for $6,133.75 in costs as the prevailing party. (Doc. 175). Plaintiff opposes both motions. (Docs. 179, 180).[1]

The Court referred Defendant's motions to Magistrate Judge Leslie R. Hoffman. Thereafter, Judge Hoffman issued a Report and Recommendation ("**R&R**") recommending that the Court deny Defendant's motion for attorney's fees. (Doc. 188, pp. 5–14). She also recommends that the Court grant in part Defendant's motion for costs in the amount of $4,628.65. (*Id*. at 15–23). Defendant objects to Judge Hoffman's recommendation that the Court deny its motion for attorney's fees. (Doc. 189).[2] Plaintiff has responded (Doc. 190), therefore, the issue of Defendant's entitlement to attorney fees is ripe for adjudication.

## II.     Legal Standards

### A.     Review of Report and Recommendations

In resolving objections to the recommendation of a magistrate judge, the district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. Fed. R. Civ. P. 72(b)(3). *De novo* review does not require a new hearing of witness testimony, but it does require independent consideration of factual issues based on the record. *Jeffrey S. by Ernest S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 513 (11th Cir. 1990). The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3).

### B.     Motion for Attorney's Fees

---

[1] On June 18, 2020, Defendant moved for, but was denied, leave to file a reply in support of its motion for attorney's fees. (*See* Docs. 182, 185).

[2] Defendant does not object to Judge Hoffman's recommendation that the Court partially grant its motion for costs in the amount of $4,628.65. So, finding no clear error, the Court will adopt Judge Hoffman's recommendation in this regard.

"The Lanham Act allows courts to award reasonable attorney fees to prevailing parties 'in exceptional cases.'" *Donut Joe's, Inc. v. Interveston Food Servs., LLC*, 116 F. Supp. 3d 1290, 1292 (N.D. Ala. 2015) (quoting 15 U.S.C. § 1117(a)). Historically, the U.S. Court of Appeals for the Eleventh Circuit has defined "an exceptional case" as "one that can be characterized as malicious, fraudulent, deliberate and willful." *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1335 (11th Cir. 2001). However, that definition was abrogated by the Supreme Court's decision in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 572 U.S. 545, 554 (2014). In *Octane*, the Supreme Court held that an exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position" or the manner in which the party litigated the case. *Id.* The Court also lowered the requisite evidentiary standard for proving an "exceptional" case from clear and convincing evidence to a preponderance of evidence. *Octane Fitness*, 572 U.S. at 1758.

Determining whether a case is exceptional and, if so, whether to award attorney's fees remains within the sound discretion of the court. *Tobinick v. Novella*, 884 F.3d 1110, 1117 (11th Cir. 2018) (citing *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994)). That determination requires consideration of the totality of the circumstances and must be made on a case-by-case basis. *Octane Fitness*, 572 U.S. at 554. Courts can consider a non-exhaustive list of factors including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 at 534 n.19 (1994)).

**III.     Analysis – Entitlement to Attorney's Fees**

    **A.     The Strength of Plaintiff's Litigating Position**

Defendant argues this is an exceptional case because the substantive strength of Plaintiff's litigating position was exceptionally weak and objectively unreasonable. (Doc. 74 at 9–11). The Court agrees.

The weakness of Plaintiff's position first became apparent at the preliminary injunction stage. In seeking injunctive relief, Plaintiff was required to establish, *inter alia*, a substantial likelihood of success on the merits for its trademark infringement claims. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). To succeed on the merits of a trademark infringement claim, a plaintiff must demonstrate: (1) that it has rights in the mark at issue; and (2) the defendant adopted a mark "that was the same, or confusingly similar to the plaintiff's mark, such that there was a likelihood of confusion for consumers as to the proper origin of the goods created by the defendant's use of the" mark. *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512 (11th Cir. 1984). In determining whether a likelihood of consumer confusion exists, courts consider seven factors: (1) the strength of the plaintiff's mark; (2) similarity of the parties' marks; (3) similarity of the products the marks represent; (4) similarity of the parties' trade channels and customers; (5) similarity of the advertising media; (6) the defendant's intent; and (7) actual confusion. *Frehling Enters., Inc. v. Int'l Select Grp, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999).

As noted in the Court's preliminary injunction order ("**Injunction Order**"), Plaintiff did not demonstrate any confusing similarity between its marks and Defendant's marks; it made "circular" arguments regarding Defendant's intent; and it did not proffer any evidence of actual confusion. (Doc. 35, pp. 6–8). In fact, "…there is *little likelihood of confusion* between the [Defendant]'s marks

4

and [Plaintiff]'s marks." (*id*. at 8) (emphasis added).

The Court gave Plaintiff an opportunity to develop its case, explaining that its "assessment" of Plaintiff's claims "could change as additional evidence [was] presented." (*Id.*). However, it never did. Instead, the weakness of Plaintiff's position grew more apparent at the summary judgment stage.

In evaluating the evidence at the summary judgment stage, the Court found that Plaintiff's marks were suggestive and entitled to protection, but that their strength had been weakened due to third-party use. (Doc. 170, pp. 10–12 ("**SJ Order**")). Moreover, a side-by-side comparison of Plaintiff's marks and the Defendant's marks revealed obvious flaws in the merits of Plaintiff's position. For starters, any similarities between Plaintiff's marks and Defendant's marks were "significantly outweighed" by their differences. (*Id.* at 13–19). Moreover, Defendant's products, while similar in function to Plaintiff's, differed aesthetically and were "conspicuously labeled" with Defendant's logo. (*Id.*). Plaintiff knew, or should have known, about the substantial differences between the parties' marks and products before it initiated this trademark action. Yet Plaintiff proceeded with its lawsuit with no evidence that Defendant's use of the challenged marks created any likelihood of confusion.

In fact, Plaintiff failed to proffer any evidence of actual confusion. Plaintiff attempted to convince the Court that three unsubstantiated incidents of confusion had occurred due to Defendant's use of the marks. (Doc. 140, pp. 11–13). But the Court had previously rejected the first purported incident of actual confusion in the Injunction Order. (*Compare* Doc. 170, p. 20 *with* Doc. 35, p. 8). The second incident was grounded in hearsay and provided little value in assessing actual confusion. (Doc. 170, p. 21). And the third incident was insufficient to raise an inference of actual confusion. (*Id.* at 22).

In an attempt to show actual confusion, Plaintiff also relied on the report and survey of Dr. Eli Seggev ("**Seggev**"). Plaintiff hired Dr. Seggev "to conduct a consumer survey . . . to determine whether there is a likelihood of confusion between [Plaintiff's] TV modulator and the modulator marketed by Defendant." (Doc. 67-1, p. 3). When Defendant moved to exclude Seggev's survey (Doc. 67), Plaintiff insisted that Dr. Seggev's final report and survey was admissible "because it will be helpful to the jury in assessing the overall impression created by the parties' uses of the marks as well as actual confusion from that overall impression," (Doc. 79 at 2). However, the report was useless because Dr. Seggev never asked the survey participants to compare the parties' trademarks. (Doc 160, pp. 5-6). Before Dr. Seggev provided the survey participants images of the parties' products to compare, he removed all branding elements (names, marks, logos, etc.) so that both products simply looked like black boxes. He then asked the survey participants to opine as to whether both products could have originated from the same source. (*Id.*). As such, there was no possible way for the survey participants to assess the overall impression created by the parties' use of the marks or the likelihood of confusion. (*Id.*).

Given the obvious flaws in Dr. Seggev's survey, Plaintiff should have known that it could not support a finding of actual confusion. And because there was no other evidence to demonstrate a likelihood of confusion, Plaintiff could not have reasonably expected to succeed on its trademark claims.

Plaintiff argues that actual confusion is not required to prove a trademark infringement claim. (Doc. 179, p. 6). That is true. Proof of actual confusion isn't required to prove a trademark claim. *See Frehling*, 192 F.3d at 1340. But it "is the best evidence of likelihood of confusion." *Freedom Sav. & Loan Ass'n*, 757 F.2d at 1185). So the fact that the Plaintiff litigated its case with no reliable anecdotal instances of customer confusion or consumer surveys gives credence to the

6

Defendant's argument that the Plaintiff's claims were objectively baseless. This is especially true given the obvious differences between the parties' marks and products. Furthermore, contrary to Plaintiff's argument otherwise, the Court did not simply disagree with its purported evidence of actual confusion. Rather, after considering the record as a whole, the Court found that, "there [was] virtually no evidence of actual confusion." (Doc. 170, pp. 20–23).

Next, Plaintiff argues that the Court should not award fees simply because it didn't prevail on its motion for preliminary injunction or Defendant's motion for summary judgment. (Doc. 179, p. 5). Plaintiff also contends that Defendant "overlooks the substantive strengths of [Plaintiff's] position because the Court found that at least some of factors weighed in its favor on summary judgment. (*Id*.). But Plaintiff miscomprehends Defendant's position. Defendant does not argue that this case is exceptional just because Plaintiff lost. Rather, Defendant correctly submits that the weakness of Plaintiff's litigating position was apparent from the outset as evidenced by the lack of evidence presented at the preliminary injunction hearing and thereafter at the summary judgment stage.

Defendant acknowledges the fact that some factors weighed in Plaintiff's favor at summary judgment. (*See, e.g.*, Doc. 176, p. 5). However, in nearly every instance when the Court made a finding that could be considered favorable to the Plaintiff, those factors did not merit significant weight and/or did not impact the Court's overall analysis. (Doc. 170, pp. 6–12, 19, 22–23).

Besides, even if Plaintiff had presented some compelling evidence of consumer confusion—which it didn't—all three of its trademark claims would have ultimately failed. The first two claims were barred by the fair use doctrine, (*see* Doc. 170, pp. 23–31 (analyzing Defendant's fair use defense)), and Plaintiff's remaining trademark claim was not actionable in the Eleventh Circuit, (*id.* at 32–34). This is yet another example of how Plaintiff's litigating position was both factually and

legally unreasonable.

Last, Plaintiff contends that this case is not exceptional because its claims were "colorable." (Doc. 179, pp. 3–4). As support, Plaintiff cites to cases such as *Fla. Van Rentals Inc. v. Auto Mobility Sales, Inc.*, No. 8:13-CV-1732-T-36EAJ, 2015 WL 4887550, at *3. (M.D. Fla. Aug. 17, 2015), where the court found that, "although the totality of the evidence supporting the validity of [plaintiffs'] marks was weak," the plaintiffs' case was not exceptional because it "was at least colorable." (Doc. 179, pp. 3–4) (citing cases).

Plaintiff's argument is unavailing for multiple reasons. First, none of Plaintiff's cited cases are binding on the Court. Second, all the cases are factually distinguishable. Third, none of the cited cases explain what constitutes a colorable case. Nor does Plaintiff. However, based on the Court's research, a colorable case is simply a non-frivolous case.[3] As explained above, a defendant need not offer evidence of subjective bad faith or misconduct to recover attorney's fees. *Octane Fitness*, 572 U.S. at 554. A defendant need only show by a preponderance of the evidence that the plaintiff's case "stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Id.*

The totality of the circumstances here demonstrate by a preponderance of the evidence that Plaintiff's litigating position was extremely weak and objectively unreasonable from the outset. Furthermore, Plaintiff had a continuing obligation to assess the strength of its claims throughout the course of this litigation, but it never did. This failure, along with the dearth of evidence supporting

---

[3] *See Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987) ("A claim is colorable if it is not 'wholly insubstantial, immaterial, or frivolous.'") (quoting *Boettcher v. Secretary of Health and Human Services*, 759 F.2d 719, 722 (9th Cir.1985); *Davis v. Featherstone*, 97 F.3d 734, 737–38 (4th Cir. 1996); ("A claim is colorable if it is arguable and nonfrivolous, whether or not it would succeed on the merits.") (citation omitted); *Carbiener v. Lender Processing Servs., Inc.*, No. 3:13-cv-970-J-39PDB, 2014 WL 12610224, at *26 (M.D. Fla. July 16, 2014) ("A colorable claim is one that is not frivolous.").

Plaintiff's trademark claims, and its reliance on Dr. Seggev's bogus report, raises a reasonably strong inference that Plaintiff sued Defendant as a competitive weapon rather than to redress a lawful harm. For the foregoing reasons, attorney's fees are warranted.

### B. Unreasonable Manner of Litigation

Having found that this case is exceptional based on the weakness of Plaintiff's litigation positions, the Court need not consider the manner in which Plaintiff litigated this case. However, the Court notes that Plaintiff litigated this case in an unreasonable manner in at least two ways. First, Plaintiff litigated in an unreasonable manner when it submitted Dr. Seggev's survey in support of its trademark claims. As noted above, Dr. Seggev's report was useless. (*See* Doc. 79). Yet, Plaintiff proffered Dr. Seggev's survey to establish the overall impression created by the parties' uses of the marks. (Doc. 79, p. 2). In doing so, Plaintiff either failed to evaluate the validity of Dr. Seggev's survey, or worse, knew it was inadmissible but proceeded with improper motives. Regardless, Plaintiff's actions were unreasonable and caused Defendant to incur the unnecessary expense of filing a *Daubert* motion.

Likewise, Plaintiff caused Defendant to incur unnecessary expense by defending against its unreasonable attempt to resurrect its previously dropped trade dress claim. During summary judgment, Plaintiff insisted that its trade dress claims were still operative, arguing that its infringement action was always premised on the overall design of the parties' products rather than their word marks. (Doc. 140, p. 14 n.9). The Court rejected Plaintiff's argument as "disingenuous" and concluded that even if Plaintiff's Amended Complaint had stated a claim for trade dress infringement, Plaintiff submitted "no evidence" to support said claim. (Doc. 170, pp. 13–15). Therefore, Plaintiff's attempt to resuscitate its trade dress claim at the summary judgment stage needlessly expanded the case and caused the Court and Defendant additional and unnecessary work.

### III. Conclusion

In sum, the patent weakness of Plaintiff's case, together with its unreasonable litigation conduct, makes this an extraordinary case warranting the award of attorney fees under the Lanham Act.

It is therefore

**ORDERED** that Defendant's objection to the Report and Recommendation is sustained, and Defendant's Motion for Attorney's Fees (Doc. 176) is **GRANTED** as to Plaintiff's liability for an attorney fee award under the Lanham Act. The Court reserves ruling on the amounts of fees pending an evidentiary hearing to be set by the Court.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on February 10, 2021.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party